In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-028 CR


____________________



ROGER DALE EAST, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 128th District Court


Orange County, Texas


Trial Cause No. A-040166-R






MEMORANDUM OPINION


 A jury convicted appellant Roger Dale East, Jr. of the first-degree murder of Bruce
LaBure and assessed punishment at fifty-five years of confinement in the Texas Department
of Criminal Justice--Institutional Division. East appeals, presenting five issues for our
consideration. We affirm.



The Evidence

 East and Walter Melgar consumed drugs the afternoon of November 11, 2003, at
Melgar's house in LaBelle. East testified he had taken Xanax, Lorcets, ice, and smoked
marijuana that day. That night they went to the Tonga Club in Beaumont, where East
consumed three "Crown and Cokes." They left the club around 1:30 a.m. with Charlene
"Maggie" Oliver, a dancer at the Tonga. Melgar testified East was carrying a handgun. East
told Melgar and Oliver that Bruce LaBure owed him money and they were going to "take
care of some business about some - try to get some dope, some crystal meth." After making
several stops, they drove to Bruce LaBure's house in Mauriceville. 

 East parked behind a white van in the driveway of LaBure's house and told Melgar
and Oliver to stay in the car. Oliver testified that as East exited the car, he was carrying a
small handgun in his left hand. He put some gloves in his back pocket. He knocked on the
door, then knocked on a window, then went back to the door. LaBure opened the door, and
East entered the residence. East testified LaBure invited him in, and East said something like
"What's up" or "hello." It was dark in the house. He saw LaBure grab something off the
wall and heard a shotgun pump. East testified a shotgun discharged and he fired his firearm
two or three times in self-defense. According to East, he accidentally discharged the gun. 
 Melgar could not see inside the house, but heard a girl scream and then a shot. Oliver only
saw a flash, then heard a gunshot and then a "thump," as though someone had fallen. She
then heard a girl scream, "Oh my God, Bruce." 

 East ran from the house and ducked behind the van yelling that somebody was
shooting at him. He got back in the car and told Melgar and Oliver he had just shot someone. 
Oliver testified East told her and Melgar in the car that "he was standing over Bruce fixing
to finish him off until a girl came, that there was more people in the house that he--than he
expected." They drove away, and East disposed of his sweatshirt and gloves by throwing
them from the car window.

 Stephanie Fultz, LaBure's girlfriend, testified that she and LaBure had been using
cocaine earlier that night, and he had passed out. Fultz saw headlights and heard the dog
barking around 3 or 3:30 in the morning and woke LaBure up. He went back to sleep, and
then Fultz heard someone knocking at the bedroom window. She awakened LaBure again,
told him to "check [it] out," and he left the room. Fultz heard two light gunshots, and he 
heard a much deeper sound seconds later. She found LaBure lying on the floor, and she
screamed and called 911. Floyd LaBure, the victim's brother who was staying at the house
that night, testified he heard two noises around 3 a.m. The first was a quiet "popping sound"
and the second was from a 12-gauge shotgun. He and Fultz found Bruce LaBure lying on
the floor, struggling, with a shotgun in his hand. 

 Jennifer Earp, East's friend, testified he gave her a .22 after the incident, but prior to
him turning himself in to the authorities. She identified the .22 given to her by East as
State's Exhibit 19. Shaunna Kinney testified Earp gave her the gun wrapped in a bandana. 
East told Kinney to get rid of the gun. Kinney gave the gun to her boyfriend, Chad
Worthington, who stored the gun in his safe. Worthington turned the gun over to Sergeant
Marion. Worthington identified State's Exhibit 19 as the gun he turned over and as the gun
he had seen on a person identified to him as Roger Dale East, Jr. 

 Patrol Corporal David Lampman of the Orange County Sheriff's Office found
LaBure's body after being dispatched to the scene. Corporal Lampman found a spent .22
caliber casing five to seven feet from the doorway. Detective Sergeant Jimmy LeBouef
located another spent .22 caliber casing three or more feet from the door. The casings were
admitted into evidence. Calvin Story, a ballistics expert with the Texas Department of Public
Safety, testified the .22 casings marked as State's Exhibits 36 and 54 were fired from the
firearm marked as State's Exhibit 19. 

 Dr. Tommy Brown, a forensic pathologist, performed the autopsy on LaBure. Brown
testified LaBure suffered from three gunshot wounds: one to the left side of the head, one to
the center of the chest, and one to the lower left rib area. Brown opined that at the time of
the gunshot to LaBure's head, the barrel of the gun was two to three inches away from the
victim's skin. 

 The jury found East guilty of murder. The court held a punishment hearing and heard
testimony from several witnesses, including Tracy and Richard Thrasher. The Thrashers 
testified that on November 10, 2003, East came to their home and threatened to kill Richard. 
The jury assessed punishment at fifty-five years of confinement in the Texas Department of
Criminal Justice Institutional Division. 

Juror Misconduct 

 In East's first and fifth issues on appeal, he alleges juror misconduct. He argues in
his first issue that the trial court abused its discretion in denying his motion for mistrial
because a juror admitted to watching television publicity regarding the case prior to the jury's
deliberations. A defendant can raise claims of juror misconduct by a motion for mistrial if
the misconduct is discovered during trial. See Camacho v. State, 864 S.W.2d 524, 530 (Tex.
Crim. App. 1993). The defendant must show (1) the evidence was received by the jury and
(2) the evidence was detrimental or adverse to the defendant. Bustamante v. State, 106
S.W.3d 738, 743 (Tex. Crim. App. 2003). The question of whether a jury "received" other
evidence is one of degree, and a passing remark will not constitute receipt of other evidence. 
Goldstein v. State, 803 S.W.2d 777, 796 (Tex. App.--Dallas 1991, pet. ref'd).

 After opening statements and during the first witness's testimony, a juror informed
the court in chambers that another juror had mentioned to the other jurors that he saw a news
story regarding the case on television the night before. The juror reporting the incident
explained that she handed the juror his instructions and juror badge and he began to tell the
jurors that the news from the night before said the case was a high-profile case. The other
jurors immediately informed him he could not talk about it. East made a motion for mistrial. 
The juror in question admitted in chambers that he commented on the news report. He stated
he was "flipping channels," saw "Fox Trot," and ran out of the room to tell his wife that the
report concerned the case on which he was serving. He stated he did not see any facts from
the case or form any opinion as a result of the news report. The trial court denied East's
motion for mistrial. 

 East contends on appeal that the juror's remarks constituted receipt of other evidence
and require a reversal because the "received" evidence was detrimental to him. The only
evidence the jury could have "received" was that the case was a high-profile case. East has
not shown how such evidence, even if it was "received," was detrimental to him. Issue one
is overruled.

 In his fifth issue, East contends the trial court abused its discretion in denying his
motion for new trial. The basis of his motion for new trial was a juror's affidavit attached
to the motion. The affidavit stated (1) the juror felt there still was a chance the murder was
a result of self-defense, (2) the jurors discussed the effects of parole on the sentence, and (3)
the presiding juror pressured the jury to reach a verdict. The granting or denying of a motion
for new trial lies within the discretion of the trial court. Lewis v. State, 911 S.W.2d 1, 7 (Tex.
Crim. App. 1995). "We do not substitute our judgment for that of the trial court, but rather
decide whether the trial court's decision was arbitrary or unreasonable." Id. Rule 606(b) of
the Texas Rules of Evidence addresses juror testimony related to the validity of a verdict or
indictment, as follows:

 (b) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry
into the validity of a verdict or indictment, a juror may not testify as to any
matter or statement occurring during the jury's deliberations, or to the effect
of anything on any juror's mind or emotions or mental processes, as
influencing any juror's assent to or dissent from the verdict or indictment. Nor
may a juror's affidavit or any statement by a juror concerning any matter about
which the juror would be precluded from testifying be admitted in evidence for
any of these purposes. However, a juror may testify: (1) whether any outside
influence was improperly brought to bear upon any juror; or (2) to rebut a
claim that the juror was not qualified to serve.


Tex. R. Evid. 606(b). Because the affidavit upon which East relies contains testimony
related to the jury's deliberations, jurors' mental processes, and jurors' assent to or dissent
from the verdict, such evidence is prohibited under Rule 606(b). See id. East's fifth issue
is overruled. Evidence of Extraneous Offenses

 East next argues the trial court abused its discretion in overruling his objection to the
introduction of extraneous offenses to prove his character during the punishment phase. East
claims the State's evidence that he threatened Tracy and Richard Thrasher should have been
excluded under Texas Rule of Evidence 404. See Tex. R. Evid. 404(b). He maintains the
prejudicial effect of the testimony outweighs any probative value and that the admission of
such evidence constituted reversible error. 

 Section 3 of article 37.07 of the Texas Code of Criminal Procedure addresses evidence
of prior criminal record in criminal cases after a finding of guilty:

 (a)(1) Regardless of the plea and whether the punishment be assessed
by the judge or the jury, evidence may be offered by the state and the
defendant as to any matter the court deems relevant to sentencing, including
but not limited to the prior criminal record of the defendant, his general
reputation, his character, an opinion regarding his character, the circumstances
of the offense for which he is being tried, and, notwithstanding Rules 404 and
405, Texas Rules of Evidence, any other evidence of an extraneous crime or
bad act that is shown beyond a reasonable doubt by evidence to have been
committed by the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been charged with or
finally convicted of the crime or act. 


 . . . .


 (b) After the introduction of such evidence has been concluded, and if
the jury has the responsibility of assessing the punishment, the court shall give
such additional written instructions as may be necessary and the order of
procedure and the rules governing the conduct of the trial shall be the same as
are applicable on the issue of guilt or innocence.


 . . . .

 

 (g) On timely request of the defendant, notice of intent to introduce
evidence under this article shall be given in the same manner required by Rule
404(b), Texas Rules of Evidence. If the attorney representing the state intends
to introduce an extraneous crime or bad act that has not resulted in a final
conviction in a court of record or a probated or suspended sentence, notice of
that intent is reasonable only if the notice includes the date on which and the
county in which the alleged crime or bad act occurred and the name of the
alleged victim of the crime or bad act. 


Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)(b),(g) (Vernon Supp. 2006). On May 6,
2004, the State filed its response to East's request for notice of the State's intention to
introduce evidence of other crimes, wrongs, or acts during the punishment phase of the trial. 
The State gave notice of its intention to introduce evidence that on November 10, 2003, East
committed aggravated assault, terroristic threat, and disorderly conduct against Richard
Thrasher. Tracy and Richard Thrasher only testified during the punishment phase of the trial. 
In its charge at the punishment phase, the trial court instructed the jury that any extraneous
evidence must be proven beyond a reasonable doubt before it could be considered by the jury
as a factor affecting punishment. Under section 3 of the Texas Code of Criminal Procedure,
the Thrashers' testimony is admissible. See id. East's second issue is overruled. 

Legal and Factual Sufficiency of the Evidence

 East contends the evidence was legally and factually insufficient to support the
conviction. Specifically, he maintains there is no evidence he was acting other than in self-defense. When reviewing a challenge to the legal sufficiency of the evidence, we examine
the evidence in the light most favorable to the judgment and determine whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004). When reviewing the factual
sufficiency of the evidence, we review all evidence in a neutral light and determine whether
the fact finder was rationally justified in finding guilt beyond a reasonable doubt. See
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). To reverse a case on a factual
sufficiency challenge, we must find, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the fact finder's verdict. Id. at 415. 
Under either review, the fact finder is the exclusive judge of the witnesses' credibility and
the weight to be given to their testimony. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim.
App. 1997). 

 East admitted going to LaBure's house "to take care of some business" the night of
the murder. East admitted that he carried his gun into the house and fired the gun two or
three times in self-defense. Floyd LaBure testified he heard a quiet noise followed by a
second shot he recognized as one from a 12-gauge shotgun. Fultz testified she heard two
shots from a pistol and then a louder, crashing sound. Oliver testified East told her he was
"standing over Bruce fixing to finish him off until a girl came in, [and] that there [were]
more people in the house . . . than he expected." East admitted State's Exhibit 19 was the
pistol that caused LaBure's death and stipulated that State's Exhibit 19 was his gun and a
firearm. Shell casings were obtained from the scene and ballistics expert Story testified the
casings were shot from State's Exhibit 19 and Story identified the handgun as a firearm. 
Forensic pathologist Brown identified the cause of death as three gunshot wounds to the head
and chest. East did not dispute Brown's opinion that the shot to LaBure's head was made
with the barrel of the gun only two to three inches from LaBure's head. After the shooting,
East did not summon the police or an ambulance, but left the scene and threw his shirt out
the window of the car. East asked Kinney to dispose of the gun. On this record, we find the
jury could have found the essential elements of the offense beyond a reasonable doubt, and
was rationally justified in finding East guilty. The evidence is both legally and factually
sufficient to support the conviction. We overrule East's third issue.

Violation of Due Process

 East's fourth issue asserts a violation of his constitutional rights to due process when
the court denied his motion for instructed verdict based on the prosecution's failure to prove
the .22 handgun was a firearm as alleged in the indictment. East argues the trial court should
not have allowed the prosecutor to reopen the State's case to prove the handgun was in fact
a firearm. After the State rested and prior to closing arguments, the following exchange
occurred outside the presence of the jury: 

 [The Court]: I believe the defense has a motion?


 [Defense Counsel]: Yes, Your Honor. . . . I would like to reurge the motion
. . . made earlier for instructed verdict; and as an additional ground, is that the
State has failed to prove the indictment, as it alleges, that this weapon used
was a firearm, Your Honor.

 

 [Prosecutor]: Your Honor, before the Court rules on that, we would urge a
reopening, just out of an abundance of caution, to make sure that it is proven
that this is, indeed, a firearm, the semiautomatic .22 pistol -or the pistol that
was introduced into evidence and admitted into evidence.

 [The Court]: Well, I think where we would be is I would have to have the
court reporter really read back through everybody's testimony to see if that
word actually was used. I know that there were words that were similar to that
that were used in this case. So, with that motion before me and with your
request to reopen, I will allow you to reopen for that limited purpose only. 


 [Prosecutor]: Okay.


 [Defense Counsel]: And we would object to that.


 [The Court]: The objection is noted, Counsel.


 [Prosecutor]: Okay. And Your Honor --


 [The Court]: I will state this further so that you won't have to make your
motions anymore, that if he does bring in someone with that proof, that then
your motions will be denied. 


East then stipulated that State's Exhibit 19, the .22 caliber semiautomatic pistol, was a
firearm as alleged in the indictment. The stipulation was then given to the jury. 

 By statute, a trial court is required to allow the introduction of testimony at any time
before argument "if it appears that it is necessary to a due administration of justice." Tex.
Code Crim. Proc. Ann. art. 36.02 (Vernon 1981). The Texas Court of Criminal Appeals
has construed the phrase "due administration of justice" to mean that the trial court should
allow a case to be reopened if the proposed evidence would materially change the case in the
proponent's favor. Peek v. State, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). An appellate
court reviews a trial court's decision to reopen a case pursuant to article 36.02 under an abuse
of discretion standard. Reeves v. State, 113 S.W.3d 791, 794 (Tex. App.--Dallas 2003, no
pet.). Both East and Brown referred to the .22 handgun as a firearm. It is clear from the
exchange outside of the presence of the jury that the court could not remember if any of the
witnesses had identified State's Exhibit 19 as a firearm, and so out of an abundance of
caution, the court reopened the case for the stipulation in order to establish State's Exhibit
19 was a firearm as alleged in the indictment. The stipulation established the .22 handgun
was a firearm as alleged in the indictment. Because sufficient evidence existed to prove the
.22 handgun was a firearm, the court's denial of East's motion for instructed verdict did not
violate his constitutional rights to due process. The trial court did not abuse its discretion in
allowing the State to reopen the evidence for the stipulation. East's fourth issue is overruled. 
The judgment of the trial court is affirmed.

 AFFIRMED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on November 9, 2006

Opinion Delivered January 24, 2007

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.